# MARYLAND REPORTS.

## JUNE TERM, A. D., 1852.

## John Glenn, Perm't Trustee of E. M. Kerr, *against* George M. Gill, Receiver.

The original complainant in this suit had made himself liable to the creditors of a house, although, by articles of agreement, he and the defendant were not partners *inter sese*. The complainant had no lien on the stock in trade, not being a partner *inter sese*. The equity or lien of the creditors is to be worked out through the partners themselves, and therefore cannot exist in this case.

The whole of the equity of the joint creditors is necessarily derivative, and unless the person who has made himself liable to creditors has a lien, the creditors can have none.

The effect of the former decision of this court, (6 *Gill*, 404,) was to make the property the *separate* estate of Edward M. Kerr.

Kerr being insolvent, and the appellant appointed his trustee, and having given bond, the property must be administered in conformity with our insolvent laws, and for that purpose it must be delivered up to the trustee of Kerr.

THIS case is brought up by an appeal from a decree of the chancellor. The original parties to the suit were Moses Potter and Edward M. Kerr. The former filed his bill against the latter on the 8th September 1846. This bill asked for the appointment of a receiver, an injunction to restrain Kerr from selling or disposing of, or detaining from the receiver any portion of the "partnership effects," or from collecting any debts due to the partners; for a dissolution of the partnership and for general relief.

1    v.2

Glenn vs. Gill.

The complainant sets forth in his bill an agreement between himself and the defendant, 23rd January 1846, in virtue of which they commenced in the city of Baltimore a wholesale and retail "queens ware and china business," under the name and firm of E. M. Kerr & Co.

The articles of agreement stated the duties of each: Kerr to furnish the capital, keep up a full stock of goods, &c., and the complainant to act as salesman and general clerk. For his services he was to receive one quarter of the nett profits, after deducting all expenses and interest on the capital, at the rate of six per cent. per annum, and to receive for his support from said concern $83.33, afterwards increased to $100 per month, to be advanced from the nett profits, and deducted from the complainant's one quarter share thereof at the end of each year. The complainant was not to be responsible for the debts and liabilities of the firm; they were to be paid by Kerr. The bill charges that soon after the commencement of the business, the complainant was held out to all persons dealing with them as a partner; signs were placed at the store, which evidenced to all persons reading the same, that they were partners, and various circulars were issued, sometimes by one and sometimes by the other, indicating the same fact; whereby the complainant is liable for all debts created in the regular and legitimate business of the firm. Kerr is unable to meet his own individual liabilities, and is appropriating the funds of the firm to the payment of them, and other acts of misconduct by Kerr are charged, and it is stated, furnish ground for all the relief which he asks, as stated as above.

Upon the bill being presented to him, Chancellor Bland ordered the injunction as it was prayed, and that the application for a receiver stand over until the answer was filed and further order.

Kerr filed his answer, and therein states that he has been engaged in the business in Baltimore ever since 1828, and states other circumstances which he supposed authorised him to deny that by the agreement they were partners. Even

"the limited connection" between them had been dissolved, does not admit his insolvency, &c.

A commission was issued to take proof, and the proof taken showed, that the complainant might, by the creditors of the store, be regarded and treated as a partner. Afterwards, on the 11th January 1847, Chancellor Johnson continued the injunction, being of the opinion that as to third persons they were partners; that being partners the complainant has a right to insist that the partnership effects shall be applied to the satisfaction of the joint creditors, and it is the duty of the court to preserve the property from misappropriation by the partner in possession of the partnership effects, and place those effects in the hands of a receiver. He subsequently appointed the appellee, George M. Gill, the receiver.

From the several orders granting and continuing the injunction, and appointing a receiver, the defendant appealed.

This court, June term 1848, reversed the order of the chancellor and remanded the cause, that an account may be stated of the profits, while Potter acted as clerk or salesman of Kerr.

The report of this case thus far will be found in 6 *Gill,* 404.

Kerr had applied for the benefit of the insolvent laws, and John Glenn, the appellant, was appointed his permanent trustee, and as such gave bond. Glenn, on the 3rd July 1848, filed his petition in the court of chancery, setting forth his appointment as trustee, the reversal by the Court of Appeals of the chancellor's orders, and praying the chancellor to pass an order, directing Gill, the receiver, to pay over and deliver up to him as trustee, all the money and effects in his hands as receiver. Whereupon the receiver was required by a certain day to show cause, &c., in the usual form.

The receiver showed cause in the form of an answer, in which, after the matters set forth in the petition, he states that Potter had applied for the benefit of the insolvent laws, and one Samuel Webb had been appointed and had qualified as such.

The answer further stated, that while he was the receiver, and before the reversal by the Court of Appeals of the order of the

chancellor appointing him the receiver, an attachment had been issued out of the circuit court of the United States, was still pending at the suit of one Samuel Tabbs, which had been laid in the hands of the receiver, as garnishee of Kerr, and that since the reversal other attachments have been issued by non-resident creditors out of Baltimore county court, founded on judgments, some of them against Kerr individually, and some against Kerr and Potter, and were laid to cover the funds collected by him officially as receiver, under the court's appointment. For these reasons he prays that no order may be passed, by which he may be made twice liable for the funds in question.

The case being again submitted to the chancellor, he dismissed the appellant's petition, without prejudice to his right to renew it thereafter, and ordered the appellee to pay into court the money which he had in his hands as the receiver.

From this last order the present appeal is taken, and was argued before all the judges.

By *Wallis* and *Pratt* for the appellants, and *Gill* and *Nelson* for the appellee.

*Wallis* for the appellant.

The appellee is not in strictness a partner, although, by his own act, he is liable to creditors, if they choose to regard him as such, just as if he was actually a partner. The goods in controversy are *separate* property, and not answerable for the debts for which Potter is liable, in preference to other debts for which Potter was not liable. *Story on Part.*, sec. 361. 19 *Vermont Reports*, 278, 286. 20 *Vermont*, 479. 30 *Alabama*, 837, sec. 846. 7 *Gill's Reports*, 265. 38 *Eng. C. L. R.*, 495. *Owings vs. Owings*, 10 *G. & J.* 1 *H. & J.*, 489.

The Court of Appeals say, it was all wrong to grant an injunction or appoint a receiver, and funds improperly brought into court cannot there be distributed.

But one attachment before the reversal.

2 *Story, sec.* 891. Funds in the hands of a receiver cannot

be attached. 1 *Ham. Ohio Reports*, 275. 8 *Paige*, 388. 7 *G. & J.*, 428. 10 *Peters*, 403. 4 *How.*, 4. 7 *Howard*, 624, 625. 5 *Gill Rep.*, 426. The fund is to go into the hands of a trustee of an insolvent, to be administered according to law. This is an attempt to set aside the whole machinery of our insolvent system.

6 *How.*, 533. What is impairing a contract? 1 *How.*, 311. 2 *How.*, 612. 9 *How.*, 528. There is a distinction between laws which impair the remedy, and those which impair the obligation of contracts.

The court of chancery has improperly taken these funds into its possession; shall it distribute them, under a pretence of avoiding circuity of action?

A particular tribunal is appointed to administer the assets of an insolvent applicant. With this other courts must not interfere. See *Power and Wallis, vs. Dilly and others*, decided in December 1850. 4 *G. & J.*, 292, 293.

The appeal is not *premature*. It dismisses the petition; is final as to separate creditors.

We contend in behalf of the appellant:

1st. That his appointment and qualification as permanent trustee, entitled him to the immediate possession and control of the assets of Kerr, subject to the effect of the proceedings pending, and that the reversal by this court of the chancellor's orders, divested the appellee, *eo instanti*, of all right to the assets in his custody, as against the appellant, and entitled the appellant to an order in chancery, directing their delivery to him.

2nd. That the appellee is not entitled, and has no need, for his own protection, to retain possession of the assets in his hands, because of the attachments set up by him; forasmuch as those assets being in his hands as receiver, and constructively in the custody of the court of chancery, (whose order in the premises will always protect him,) were not subject to attachment, either before or after this court's decree of reversal.

3rd. That whatever may be the lien, if any, which the at-

taching creditors, whether foreign or domestic, may have obtained by their proceedings, the appellant is still entitled to the possession and distribution of the insolvent's assets, subject to such lien.

4th. That there is no evidence to shew that any of the attaching creditors are citizens of other States, or that the judgments on which their attachments rest, were founded upon contracts made out of this State, and not with reference to its laws.

5th. That the appellee is not entitled to retain possession of the funds for the protection of the creditors of E. M. Kerr & Co.; because those creditors are no parties to any of these proceedings; because any right of theirs to take part therein was wholly incidental to the relief prayed in the original bill, for which this court has decided there was no foundation; and because the case was remanded by this court to the court of chancery, for the sole purpose of taking an account of the profits, with a view to the liquidation of Potter's wages as clerk, and without any reference to creditors or their interests.

6th. That all the attachments are laid in the hands of the appellant as well as the appellee, and that the prayer of the appellant may therefore be granted, without any risk, as to them, to either the appellee or the attaching creditors.

7th. That the trustee of Moses Potter can have no claim to receive the funds in the appellee's hands, and no interest in them except as any other creditor.

*Gill* for appellee.

There was no partnership *inter se.*

The vital question is, whether this property is the separate property of Kerr, or the joint property of the firm?

See 1*st Vez., Jr.,* 131, and 38 *Eng. Com. Law Rep.,* 495. 2 *H. Blk.,* 235.  3 *H. & J.,* 505.  6 *Conn. R.,* 351.  22 *Pick.,* 155.

The funds are in the court of chancery; ought not that court to stay the fund and make a distribution of it?

The creditors ought to be parties. Their attachments cannot be decided upon without making them parties.

Case is not in a condition to pass a final order. Such an order would be a dismissal of the bill so far as creditors are concerned, though it might have left the bill as a bill for an account of the profits.

Our positions are:

1st. That the creditors of E. M. Kerr & Co., have a right to have the effects of E. M. Kerr & Co., (the insolvency of E. M. Kerr & Co., and the application for the benefit of the insolvent laws of both members of this firm being admitted,) applied to pay the debts of E. M. Kerr & Co., before the separate debts of E. M. Kerr can be paid.

2nd. That the proceeds of the property sold by the receiver, and which he has paid into court, and which is claimed in this case by John Glenn, permanent trustee of Edward M. Kerr, is, as relates to the partnership creditors, to be taken and considered as partnership property, and therefore to be applied to pay partnership debts.

3rd. That although as between Moses Potter and Edward M. Kerr, there may be no partnership property, and Moses Potter and his representatives may be debarred from claiming it, yet the fund being in a court of equity, and it being in fact a partnership fund, and the result of partnership transactions, that court is bound so to distribute it, as to cause the partnership debts to be first paid before it permits it to be withdrawn from its jurisdiction; that circuity will always be avoided where it is practicable, and a multiplication of costs and charges, and commissions, will also be avoided, and substantial justice will be done to all parties in interest by a court of chancery.

4th. That under the circumstances, the petition filed in the court of chancery by the partnership creditors of E. M. Kerr & Co., should have been answered, and that the permanent trustee of E. M. Kerr, the appellant here, can lawfully claim only the balance of money in court after first satisfying the partnership creditors.

5th. That the fund being lawfully in the court of chancery, the appeals on this case being without security, and not arresting in any way the powers of that court, it should be there distributed; and to order the same to be paid to the permanent trustee, will have no other effect, than to transfer the fund from chancery to the court sitting in insolvency, causing additional expense, and great and increased delay.

6th. That the fund being lawfully in chancery, and a portion of the creditors of E. M. Kerr & Co. being citizens of another State, and their claims having accrued out of the State of Maryland, and the insolvent laws being, as respects such foreign claims, unconstitutional and void, it follows that the trustee, under the insolvent laws, cannot to their prejudice, and in violation of their rights, interfere with or claim this fund.

7th. That it appearing that before the time of filing the petition of appellant, and that before and after the time when the appointment of the receiver in this case was revoked by the Court of Appeals, attachments on judgments in favor of citizens of a foreign State, and for foreign claims, some of which judgments were against Edward M. Kerr, and some against Edward M. Kerr and Moses Potter, were issued and laid in the hands of George M. Gill, who was the receiver appointed by the court of chancery; that the trustee under the insolvent law cannot claim the fund in question, until these attachments have been first dissolved, or without making the attaching creditors parties to his petition.

8th. That the appeal in this case was premature, and taken too soon; that the mere dismissal of the petitioner does not, under the circumstances, authorise an appeal, even if it could have been made finally to appear, that the funds in court were the separate property of Edward M. Kerr, and as such passed to his trustee.

9th. That proper parties were not made to the petition of appellant, and that the case of M. Potter against Edward M. Kerr, was not in a condition for any final order or decree, such as was prayed for by the petition of appellant.

*Nelson* for appellee.

The facts stated in the bill induced Chancellor Bland to grant the injunction, and notwithstanding any thing to be found in the answer, the injunction was continued, and a receiver was appointed by Chancellor Johnson. The Court of Appeals reversed the orders, and thereby it is said ascertained the character of the property to be separate property.

If the agreement did not make them partners, surely the course of dealing did, so as to give Potter an equity which might be used to subserve the interest of the creditors.

The party who is entitled to the profits, must have an interest in the effects.

When the Court of Appeals reversed the decision of the chancellor, the receiver had converted the property into money. Property sold in April 1847. Claims between seventy-four and eighty thousand dollars were filed, and there was a reference to the auditor when the decision of the Court of Appeals was made.

If this property be the property of Kerr, and *some one else,* the trustee of Kerr cannot claim the exclusive possession of it.

3 *Peters*, 411, *Clay and Smith.* 5 *Peters*, 586, *Boteler and Finlay. Baldwin's C. C. R.*, 299. The foreign creditors must do no act which acknowledges the trustee. They could only go into the chancery court, and ask that the funds which are there be applied to the discharge of their claims.

The attachments being laid in the hands of the trustee, the court of chancery ought to protect its officer.

The insolvent laws, so far as they affect the interests of foreign creditors, are nullities; constitutional to affect the rights of some of the creditors, but nullities with respect to others.

*Pratt.* In much that is said on the other side, it is assumed, that Glenn is here claiming the property of a partnership, whereas all that he claims is the property which belongs to the insolvent applicant, whose trustee he is. Potter, by his actings and sayings, may prejudice himself, may make him-

self answerable for the debts due from the store; but these acts cannot prejudice the rights of others—the rights of those who were the creditors of Kerr before, or indeed after the acts done by Potter, whereby he made himself answerable for debts contracted, not before, but afterwards. He was an ostensible partner, and because of this, if the creditors of a later date choose, he may be sued as a partner, and his property made answerable for such debts. Although this is true, he has no interest in the firm, except as clerk. 3 *Stephens' Nisi Prius,* 2376. If he be made to pay any of the debts, he may recover back the money so paid, but not by a bill filed in equity asking a settlement of the partnership concern, but by an action at law for so much money paid, laid out and expended, to and for the use of the individual Kerr.

The creditors of the store may charge him as a partner if they choose; unless, indeed, any of them had notice that they were not partners *inter sese.* Such notice would prevent such of them from recovering against the partnership. *Collyer, p.* 56. But no act of the creditors, in suing them jointly, can make Kerr and Potter partners *inter se,* or authorise Potter, either at law or in equity, to claim any right or lien which he would have had if he had been an actual partner, having an interest in the stock in trade.

Potter made himself liable to the creditors, and gave them a right to call him a partner, but a partnership of this description, does not give the ostensible partner a right, in any judicial forum, to claim an interest in the store or the stock in trade, in violation of his articles of agreement.

7 *Gill,* 265, 268, tells us of the liens which partners have, and that the property is joint property, but the man who claims to have such liens and joint property, must be prepared to show that there existed a partnership *inter se.*

The store, as the store of Kerr alone, had existed for several years, and although Potter was in it during that time, he cannot be made answerable as partner for any one debt contracted for the store previously to the articles of agreement. The partnership, we are given to understand, existed but a very

short period.   The stock in trade, (the goods on the shelves,)
bought before the period of the alleged partnership, were
owned by Kerr alone, and for these Potter is not at all re-
sponsible.   Can the creditors, who became such while Potter
was answerable for the goods purchased, claim the goods for
which Potter was never answerable to the vendors, and insist
that these goods belong to them until their claims are satisfied,
although, in order to satisfy their claims, the vendors of the
earlier supply of goods will be left without any thing to satisfy
them?   If such be the law of partnerships, how easy it will
be to prefer the later creditors and to defraud *bona fide* credi-
tors, by the instrumentality of a man of straw—an insolvent,
who might be introduced into the store as a partner, just for
such a purpose?

Kerr could be sued alone for debts contracted, while the
creditors could deal with them as partners, or if any creditor
sued both of them, neither could in the suit deny the partner-
ship.   But for the debts due *to* the store an action could not
be brought in the name of both, and this simply because Pot-
ter had no interest in the debt, or the thing sold to the debtor.

Potter was made answerable by his own act for these
claims, but the liability of Kerr or Kerr's property is not at
all changed by this *constructive partnership*.

Potter's trustee certainly can claim no interest in these
goods, because he had none himself.

Money in the hands of a sheriff cannot be attached, nor
money or effects in the hands of an insolvent's trustee.   1
*Bland*, 460, 461.   *Sergeant on Attachment*, 89.   Nor can
effects in the hands of a receiver appointed by the court of
chancery.

The attachments, of which we hear, have been laid in the
hands of Glenn, as trustee, as well as in the hands of the re-
ceiver.   If these effects be attachable at all, then Glenn will
take them, subject to any lien upon them.

Some of the judgments are against Kerr and Potter, some
against Kerr alone—there are none of them against Potter

alone. If any creditor of the store had sued Potter alone, it might have been difficult indeed to sustain the action.

Why have other parties? Kerr has become insolvent, and Glenn is his trustee. The former Court of Appeals has decided, that the chancellor erred, as well in appointing a receiver as in granting the injunction. Those several orders are reversed and rescinded. Who is to take the property and hold it, for the benefit of those who are entitled to it, but the trustee of the man who, if he had not become insolvent, must himself have been the person to whom it was to be delivered up?

The Court of Appeals, unquestionably, has decided, that in such a case as the one stated in this record, the property does not belong to the partnership creditors. But great reliance is placed upon a few words, to be found in the reasons which the court gave for its decree. "In this case, we do not decide any question as to the rights of creditors." If the meaning of the court be correctly understood on the other side, then the question might arise, whether the decree given at a former term, or the reasons assigned for that decree at a later term, would be entitled to most weight? *In this respect, however,* the decree and the reasoning in support of it, are not at war the one with the other. The court did not *decide* any question as to the rights of the creditors. How could they decide, that is, finally determine any such question? The creditors were not parties to the suit, and could not be bound by an adjudication in that suit. They are still at liberty to show that Potter did not set forth correctly their equities, and may yet make a case, which will entitle some of them to a relief, of which Potter's statement of the transaction would deprive them.

It may be said with truth, that the creditors are not affected—concluded by the decree of this court, already rendered. But although the former decree may not be pleaded in bar to a suit brought by the creditors, yet the decree is an authority *in point,* and does decide the law of the case as spread upon this record. For this reason, (none other can be imagined,) the court, after reversing the orders, remands

the case, for what purpose? In order to settle the partnership concerns, and distribute, as partnership funds, those in the hands of the receiver? No; but in order that "an account may be stated of the profits, whilst Potter acted, (not as partner,) but for *the clerk or salesman of Kerr*." It is remanded simply to settle the claim between the clerk and his employer, and this because they were not partners *inter sese*, and Potter had none of the equities of a partner.

LE GRAND, C. J., delivered the opinion of the court.

This is the second appeal growing out of the case of Potter vs. Kerr. The former opinion of the Court of Appeals will be found reported in 6 *Gill*, 404. After that decision the appellant filed his petition in the case, alleging, that he is the permanent trustee of Edward M. Kerr, and as such, has given bond, with approved security, and praying an order be passed requiring the receiver to pay and hand over to him all the effects in his hands as receiver. At the hearing the chancellor dismissed the petition of appellant, and it is from the order of dismissal that this appeal is taken.

Moses Potter filed his bill in chancery, on the 8th of September 1846, alleging, that he was a partner of Edward M. Kerr, and praying, for reasons therein set forth, that an injunction should be granted as against Kerr, and a receiver appointed to take charge of the alleged partnership assets. The chancellor granted the prayer of the bill, upon the ground that Potter and Kerr were partners as to third persons, and that the liability of Potter, for the debts of the concern, entitled him to have the assets administered under the direction of the court. George M. Gill, Esq., was accordingly, on the 1st day of February 1847, appointed receiver, and was continued as such at the final hearing. Kerr appealed to this court, which, at June term 1848, reversed the chancellor's orders, by which injunction had been granted and receiver appointed, and remanded the case to chancery. At December term 1848, an opinion was filed, whereby it appears that the reversal rested on the ground, that there was no partnership

existing between Kerr and Potter *inter sese*, and that, in such a state of facts, Potter had no right to the relief the chancellor had given him.

In the meantime Kerr applied for the benefit of the insolvent laws, and the appellant was appointed his permanent trustee. The answer of the receiver to the petition of the appellant admits the facts set forth in the petition, but alleges, that on the 11th of February 1848, Potter also applied for the benefit of the insolvent laws, and that Samuel Webb had been appointed and qualified as his trustee. The answer further alleges, that while the appellee was receiver, and before the reversal by the Court of Appeals of the order appointing him, viz: on 28th April 1847, an attachment had issued out of the circuit court of the United States, and was still pending, at the suit of Sampson Tams, which had been laid in the hands of the appellee, as garnishee of Kerr, for the sum of $5370.75, and costs. The answer further states, that after the reversal of the orders of the chancellor, at different times, ten several attachments were issued by non-resident creditors, out of Baltimore county court, on judgments against Kerr individually, and Kerr and Potter as partners, and were laid in the appellee's hands to cover, as he alleges, the funds collected by him officially as receiver, under the court's appointment. These, appellee submits, are good and sufficient grounds why he should not be compelled to pay over any moneys in his hands during the pendency of such attachments.

The original bill of Potter, in addition to a prayer for an injunction and the appointment of a receiver, asks, "that the partnership may be declared to be dissolved, and that an account of its business may be taken under the direction of this court, and *that its effects may be applied to the payment of its debts and liabilities,* and the residue thereof be distributed between the complainant and the said Edward M. Kerr, in proportion to their respective interests."

From this statement it appears, that this case has now become a controversy between the creditors of Kerr and Potter and the creditors of Kerr. The trustee of Kerr contends, he

is entitled to the administration of the assets, according to the insolvent laws of the State, as the *separate* property of his insolvent; whilst, on the other side, it is insisted, that the property is *joint* and not separate, and should therefore be administered in chancery, applying it first to the payment of the partnership debts.

The first question for this court to determine is the character of the assets, that is, whether they be *joint* or *separate* property?

There is not, nor can there be, any difficulty as to the manner of the distribution when the character of the property is ascertained. Joint property must be first applied to partnership debts, and separate property to the individual debts of the particular partner to whom it may belong. *McCulloh vs. Dashiell*, 1 *Harr. & Gill*, 106. But the question, what is joint and what separate property, is not of easy solution in every case. From the nature of the question it might be supposed, it had been so frequently before the courts, both in England and this country, that rules had been established by which all difficulty could be readily removed, but such is not the case.

In this case, however, we encounter no such difficulty in disposing of the question. Although the Court of Appeals, in 6 *Gill*, 424, say, that the case they were then considering was "not a controversy between creditors, involving the question of joint and separate claims, but simply one involving the question, whether Potter was the actual partner of Kerr, and had a lien on the stock and effects of the concern;" they, nevertheless, according to our apprehension, *decide, in fact,* the character of the property, so far as the rights of creditors are concerned, by deciding that Potter was not a partner, and that he had no lien *under the bill filed in the cause.*

The court did not consider themselves authorised, in the then condition of the case, to dispose of the rights of the creditors, but notwithstanding this, in deciding the case, they established certain conclusions, which, according to the well

known principles of law, must control the equities and rights of the joint creditors.

The principle is well established, that the lien which the creditors have is derived entirely through the partners. The doctrine and the authorities on which it rests, are very clearly stated in the case of *Reese and Heylin, vs. Bradford*, 13 *Alabama*, 846. In that case the court use the following language: "The partnership creditors, *as such*, have no lien on the partnership effects, for the payment of their debts, and they stand in respect to partnership property, as individual creditors do to the property of individual debtors, without having any lien thereon, until their debt is reduced to judgment, which will create a lien on real estate, and when execution is issued thereon, a lien is created on the personalty. See *Story on Partnership*, 509 *and* 510. *But as the partners themselves have a lien on the partnership effects, to pay the partnership debts,* this lien may, in many cases, be made available in favor of the creditors. But the equity or lien of the creditors is to be worked out through the partners themselves, and when they can, by this lien, reach the partnership effects, and subject them to the satisfaction of their debts, *it is because they are considered as subrogated to the rights and equities of the partners* themselves, and not as having any lien or equity upon the joint effects, by virtue of their debts merely, independent of this equity of the partners.

"Having, then, no lien by virtue of their debts merely, the partners may sell and dispose of the effects of the firm as they please, or as individual debtors may, for a fair and *bona fide* consideration, and their sales cannot be set aside by the creditors. One partner may sell to his co-partner, and if the sale is fair, it will vest the exclusive title in his co-partner. *Story on Part.*, 510. *Ex-parte Ruffin*, 6 *Vesey*, 119, 126; and 11 *Vesey*, 3, 5, 8."

From this it clearly appears, that a sale made by one partner to another, immediately converts what was joint into separate property, and exempts it from all lien of partnership creditors. If a *sale* can produce this result, why should not

the fact of the property being exclusively, at all times, that of but one of the partner's, work out the same consequence? The sale in the one instance merely brings about a state of case, which, in the other, always existed. Now, the late Court of Appeals have decided that Potter had no such lien or interest in the property, as entitled him to the relief which he sought. What was that relief? He asked that Kerr should be restrained from applying the partnership effects to the payment of his individual debts; that a receiver should be appointed to take charge of them, for the benefit of all parties interested; and that they might be "*applied to the payment of its (the partnership's) debts and liabilities.*"

In thus deciding, although there was a disclaimer of any such intention, the court did, *in point of fact*, decide what is conclusive in this controversy, of the rights of the joint creditors. We have seen that the equity of the creditors is worked out through that of the partners; "that as the partners themselves have a lien on the partnership effects *to pay the partnership debts*," this lien may be availed of by the creditors, and that the "partnership creditors, *as such*, have no lien on the partnership effects for the payment of their debts."

The court in deciding *under the bill* of Potter, that he had no right to have the effects applied to the payment of the partnership debts, did in fact decide, that the joint creditors could have no such right, for they have none other than such as is derived through the partners. If Potter had no such right, they had none.

The whole of the equity of the joint creditors is purely derivative, and as the court have decided that Potter had no lien, they also, as a necessary legal corollary from it, also established that the creditors had none.

The effect of the decision was to pronounce the property the *separate* estate of Edward M. Kerr, and as he is an insolvent, under our laws, it must be administered in conformity with them. It is the policy of those laws, to have all the claims settled by the decisions of the same tribunal. In the case of *Alexander, et al., vs. Ghiselin, et al.,* 5 *Gill,* 179, it

is said: "The leading and general design of all bankrupt and insolvent laws, is to insure a prompt and complete settlement of all the affairs of the party, and an early distribution amongst the creditors, as nearly in equal proportions as a regard to positive and acknowledged preferences will admit. To facilitate these objects, our law has wisely given to the trustee, to be appointed by the court, the entire management of the estate, subject of course to the control of the court by whom he is appointed, charging him with the duty of paying off liens and incumbrances, to which the estate might be subject. His duty requires him to make the earliest disposition and settlement regarding the interests of all the creditors—the particular lien creditors included—and brings *all* the claimants before one tribunal; whereas, by allowing sheriffs and mortgagees to participate in the administration of the trust, adverse interests are created, delays endangered if not ensured, and probably different, and possibly conflicting tribunals, consulted."

Whatever liens, therefore, if there be any on the fund, must be settled by the decision of the tribunal to whom the trustee of Kerr owes obedience. Although in the case of *Larrabee vs. Talbott*, 5 *Gill*, 426, it was held, that a non-resident creditor might attach in the hands of a trustee of an insolvent any undistributed fund, we do not feel ourselves called upon to extend the principle any farther than we are actually compelled. It is the general rule of the law, that goods in *custodia legis*, cannot be replevined, *Cromwell et al., vs. Owings*, 7 *Harr. and John*, 55, and in the case of the *Farmers Bank of Delaware vs. Braston, Garnishee of the Elkton Bank of Maryland*, 7 *Gill and John*, 421, it was decided, that funds in the hands of the trustee or assignee of a bankrupt cannot be attached. We understand that it has been decided by the circuit court of the United States, for this district, that funds in the hands of a *receiver*, cannot be attached by a non-resident creditor of an insolvent. This case has gone up to the Supreme Court, and considering the great importance of the question to the people of Maryland, we deem it proper to adhere to the general doctrine, that funds in *custodia legis* can-

not be attached, until the Supreme Court shall otherwise de-
termine.   In this case, no inconvenience, or injustice, can be
done to such of the creditors of Kerr, as claim priorities be-
cause of alleged liens. If any such exist, they will be respect-
ed by the court to which the trustee of Kerr is to account,
and before distribution is ordered, there is every probability the
Supreme Court of the United States will have settled, defini-
tively, the question.   Until it is disposed of by that tribunal,
we are indisposed to recognise any other doctrine than that
which has universally obtained in our courts of judicature.

We do not think the objection, that there were not proper
parties made to the petition of the appellant, tenable.   The
Court of Appeals by its decision, had discharged the receiver
and dissolved the injunction.   Had no other proceedings been
had, Kerr would have been entitled to the funds, and his rights
have devolved on his trustee under his application, for the
benefit of the insolvent laws of the State.   The petition claim-
ed the money, and was in point of fact answered by the ap-
pellee, Gill.   He cannot deny that he had notice of it, nor
that he has had an opportunity to fully exhibit his case.

Looking to the character of this controversy we are of
opinion, that the costs ought to be paid out of the fund, and
shall accordingly so decree.

*Decree reversed.*