# GLENN, Trustee of KERR, *vs.* GILL.

The following opinion of TUCK, J., dissenting in part from that of the court
in the case of *Glenn against Gill, page* 1, being mislaid, was not found until
it was too late to insert it in the proper place.

I dissent from so much of the opinion filed in this case as
decides that the fund in controversy is the separate estate of
E. M. Kerr, *as against the creditors of Kerr & Co.* I do not
consider that question as having been so determined on the
former appeal. The creditors were not then before the court;
Kerr and Potter were the only parties to the record; the dis-
solution of the firm and the technical insolvency of the part-
ners were unknown to the court, although these facts had
occurred pending the appeal. The court evidently intended
to confine themselves to the case as then made by the record.
In alluding to the case of *Ex-parte Digby*, 38 *Eng. Com.
Law*, 495, which had been relied upon in the argument, the

court said, *(6 Gill,* 424:) "'That was a controversy between the representatives of the joint creditors on the one hand, and the separate creditors on the other. Now, as we have before stated, this is not a controversy between creditors, involving the question of joint and separate claims, but is simply one, involving the question whether Potter was the actual partner of Kerr, and had a lien on the stock and effects of the concern? If this were an application by a creditor, charging that Kerr and Potter were partners in trade, and that he was a creditor of the firm, the dissolution and the insolvency of the firm, and the improper appropriation of the funds of the firm, to the payment of the separate creditors, there might be some analogy." And, as if for the purpose of excluding the conclusion now asserted by the appellant, the court also said: "In this case we do not decide any question as to the rights of creditors."

It appears that the appellant, as trustee of Kerr, and sundry persons claiming to be creditors of the firm, have since become parties to the cause, and that the controversy has assumed the character ascribed, by the Court of Appeals, to the case of *Ex-parte Digby,* the contest now being between Kerr's trustee and the partnership creditors of Kerr & Co.

This case is not precisely like any to which we have been referred. Under its peculiar circumstances, the preference asserted in behalf of the joint creditors may, in my judgment, be maintained, notwithstanding the principle upon which, in ordinary cases of partnerships, the rights of separate and joint creditors are ascertained and enforced. If Potter had had any interest in the stock in trade, however trifling, he and Kerr would have been partners *inter sese,* and neither they nor the creditors of either, could have resisted the right of the joint creditors to be first paid out of the assets of the firm. It was, however, *a partnership as to third persons*—something more than a mere joint and several liability for all the debts of the concern—a relation which, in partnerships, unaccompanied by such private stipulations, confers certain rights on those dealing with them as partners, peculiar to that species

of joint undertaking. Having, by signs, cards and otherwise, held themselves out as partners, and thereby induced others to deal with them as such, those who were thus misled should not be deprived of the priorities to which they would be entitled but for this unknown agreement, unless their claim can be resisted on some stern and unbending rule of equity.

But, then, it is said that this is a derivative equity, and cannot be enforced in the present case, because Potter has no lien upon this property. This is the general rule. But I apprehend that it applies to partnerships made and conducted in good faith, and cannot be invoked in aid of a party who has held himself out to his customers as a partner, when, in point of fact, no partnership existed as between him and the other advertised member of the firm. I do not perceive any reason why equity should not grant relief in such a case of misrepresentation, as well as in others where persons are misled to their injury by means of misstatements. The separate and joint creditors have acted in good faith, and in ignorance of this agreement between Kerr and Potter. Each, however, is presumed to have known the law, and to have acted in reference to the rights which it conferred on one over the other. The public had a right to consider Kerr and Potter as partners, and some have dealt with them as such. Others again have dealt with and credited Kerr individually, knowing that he was one of that firm, as shown by notices, signs, &c. But, now, when the business becomes unprofitable, and what has been held out to the world as the stock in trade of the firm is about to be taken for the joint debts, by those who have been induced by Kerr himself to deal with them as a firm, he relies on this secret agreement to defeat the equity to which these claimants would otherwise be entitled. It appears to me that this was nothing short of a gross, not to say fraudulent, misrepresentation, and it would be to sanction a fraud if equity did not retain this fund, for the benefit, in the first place, of those who dealt with these parties as a commercial firm, in good faith, and in reliance upon the equities

which an actual and *bona fide* partnership would have secured to them.

It is said, however, that conceding the joint claims to be well founded as against Kerr and Potter, or either of them, it would be unjust to give them any preference over the individual creditors of Kerr, and an argument has been addressed to the court, predicated on the supposed superior equity of Kerr's creditors over those of Kerr & Co. I think that, even as between these classes of creditors, the equities of the latter should prevail. How do they stand in point of law? Both must be regarded in the attitude they occupied when they became creditors—the one of Kerr alone, and the other of Kerr & Co.—assuming always that they were ignorant of this secret agreement. We must presume that the separate creditors knew, that in trusting Kerr, they could not claim satisfaction out of the alleged partnership effects until the joint debts were paid; and we must equally suppose that credit was given to the firm by the present joint claimants, with a knowledge of the law, and in view of the assurance which the law gives, that persons crediting a partnership shall be preferred, as against the joint estates, to those who merely credit one of the members in his individual capacity. The difference in the situation of these classes of creditors is, that the separate creditor holds a claim against one of the firm only, not looking to any other responsibility, whereas the claim of the joint creditor against both members, is accompanied by an equity which entitles him to such a preference as is now sought to be enforced. If the equity should prevail, it will be a result which the separate creditors must have anticipated; but if it be defeated, the joint creditors will be denied the benefit of a security, to which, under the law of partnerships, they had a right to look, and probably did look, at the time they credited Kerr & Co.

Believing that the equities of the case are with the joint creditors, I cannot, in the absence of cases expressly denying their rights, as asserted here, refuse to them the full benefit of the relation in which they supposed they stood towards

this house, at the time they extended to them their credit, and permitted their goods to become part of, what they considered, the joint stock of Kerr & Co. It appears to me that this view of the case is fully sustained by *Ex-parte Digby*, 38 *Eng. Com. Law*, 495, and *Ex-parte Owen*, 7 *Eng. Law and Eq. Rep.*, 305.

But the court having decided that this is the separate estate of E. M. Kerr, I am of opinion that it should be placed in the hands of his permanent trustee.