DECEMBER TERM, 1854.     287

Glenn, Garn. of Kerr, vs. Boston & Sandwich Glass Co.

---

## John Glenn, Garn. of Edward M. Kerr, vs. The Boston & Sandwich Glass Company.

A discharge under the insolvent laws of this State does not impair the right of non-resident judgment creditors of the insolvent to obtain, by attachment or execution on their judgments, a preference over domestic creditors.

*Actual* possession of money or property by the garnishee, is not necessary to make an attachment efficacious or operative, provided he has the *legal* right to the possession or control of it.

Funds of the insolvent in the hands of a receiver in chancery, but improperly there because the court of chancery had no jurisdiction over them, pass to his trustee, who, for all practical purposes, may be treated as the legal possessor of them from the time of his appointment.

The general practice under the attachment system of this State has been, to condemn all credits or property of the debtor in the hands of the garnishee at the *time of the trial.*

A foreign creditor who lays his attachment in the hands of an insolvent's trustee, before such trustee actually receives the insolvent's property, does not thereby *assent* to the insolvent proceedings so as to become bound by them.

Because a foreign creditor acts with a *knowledge* of the legal effect of our insolvent system, it cannot be inferred from that knowledge, or from his levying his attachment in pursuance of it, that he assented to, or agreed to be bound by, the insolvent laws themselves.

Glenn, Garn. of Kerr, *vs.* Boston & Sandwich Glass Co.

APPEAL from the Superior Court for Baltimore city.

This was an *attachment* on judgment, issued at the instance of the appellees, a foreign corporation, on the 26th of June 1848, to affect the property and credits of Edward M. Kerr, and on the same day laid in the hands of John Glenn, the permanent trustee in insolvency of said Kerr, as garnishee, who appeared, and, at September term 1848, pleaded "*nil debet*" for Kerr, and "*nulla bona*" for himself."

*Exception.* At the trial, in October 1852, the plaintiffs proved the recovery of the judgment against Kerr on which their attachment issued, at May term 1847 of Baltimore county court, and that the debt for which it was rendered was contracted in Massachusetts by Kerr, then a citizen of Maryland, with the plaintiffs, a corporation created by the laws of the former State, by the citizens of which their stock was owned; that the garnishee was appointed permanent trustee in insolvency of said Kerr in 1847, and gave bond as such on the 28th of September of that year, and as such trustee recovered, in the case of *Glenn vs. Gill*, in the Court of Appeals, assets of Kerr sufficient to pay their claim, which are now in his hands undistributed.

The garnishee then proved, that the fund so in his hands, is the same mentioned in the case of *Potter vs. Kerr*, 1 *Md. Ch. Dec.*, 275, and was derived from the sales of property by George M. Gill, the receiver, appointed by the chancellor in that case on the 1st of February 1847, and was by said receiver paid into the court of chancery to the credit of said cause, and was recovered by the garnishee, after the decision of the cause in the Court of Appeals, above mentioned, in June 1852. The garnishee also proved, that the plaintiffs were one of the creditors who filed their claims in the case of *Potter vs. Kerr*, under the order therein passed on the 27th of April 1847, notifying creditors to do so, and their claim was reported by the auditor as entitled to a proportion of the fund in the cause for distribution.

It was agreed that the proceedings in the case of *Potter vs. Kerr*, 1 *Md. Ch. Dec.*, 275, and the same case on appeal in

6 *Gill,* 404, and the case of *Glenn vs. Gill,* 2 *Md. Rep.,* 1, might be read in this court by either party. While to these cases reference is made for a more particular history of the fund in controversy, it may be stated here that they show that in January 1847, prior to the recovery of their judgment, the plaintiffs, with other creditors of Kerr and Potter, united with Potter in a petition to the chancellor to appoint a receiver in the case of *Potter vs. Kerr.*

The plaintiffs then asked an instruction to the jury, that if they find the facts above stated, viz., the recovery of the judgment against Kerr, the contraction of the debt on which it was rendered in Massachusetts, that the plaintiffs are a foreign corporation, the issuing and levy of the attachment, the appointment of Glenn as permanent trustee of Kerr, and that he received assets of Kerr sufficient to cover their claim which still remain in his hands undistributed, then the plaintiffs are entitled to recover.

This prayer the court, (Frick, J.,) granted, and to this ruling the garnishee excepted, and from the judgment of condemnation rendered upon the verdict in favor of the plaintiffs, appealed.

The cause was argued before Le Grand, C. J., Tuck and Mason, J.

*S. T. Wallis* and *Frederick W. Brune* for the appellant, stated, that the facts of the case show, that on the 12th of January 1847, before the recovery of their judgment, the appellees, with other creditors, *voluntarily* came into the *chancery case* and recommended Gill as the receiver, and after thus making themselves parties to *that case,* and thereby subjecting themselves to the rule, that in the distribution of an insolvent's effects *equality is equity,* they go into the county court and get their judgment at law at May term 1847. On the 1st of February 1847, before this judgment was recovered, Gill was appointed receiver, and on the 27th of April in the same year, notice was given to creditors to file their claims

37      v.7

in the chancery case, and under this notice the appellees filed in chancery their claim upon which they afterwards recovered judgment. After the court of chancery had thus assumed jurisdiction of the case and these creditors had thus acquiesced in its jurisdiction, they could have been restrained by injunction from proceeding at law, and their *judgment* would not be regarded as a *lien* upon the property, but as an unwarrantable interference with the jurisdiction of the chancery court. 7 *Gill*, 319, *Ellicott vs. The United States Ins. Co.* 1 *Md. Ch. Dec.*, 469, *Boyd vs. Harris.* 4 *Johns. Ch. Rep.*, 643, *Thompson vs. Brown.* 3 *Daniell's Ch. Pr.*, 1835. 2 *Bland*, 606, *Addison vs. Bowie.* They were not only creditors coming into the chancery case, but were *actors* there, contesting the claims of other creditors; that case was a substantive litigation between creditors, and each one was as essentially an *actor* as if he had *filed a bill.* They then argued:

1st. That the fund condemned under the appellees' attachment was, at the time the attachment issued, in the court of chancery, and would have been legally distributable under the orders of that court among the appellees and other creditors of Kerr, or of his firm, if Kerr had not petitioned for the benefit of the insolvent laws. That as the Court of Appeals, at its June term 1848, (6 *Gill*, 425,) remanded the cause to the court of chancery for an account to be stated between Potter and Kerr, "without deciding any question as to the rights of creditors," after this, Kerr, being in a condition of admitted insolvency in fact, if he had not petitioned, could not have claimed the fund in the hands of the receiver or in the court of chancery, without first paying any sum which might be found due to Potter after an account, and the other claims filed there and passed upon by the auditor of that court.

2nd. That the application of Kerr did not give his trustee any superior right over the fund in chancery to that which Kerr had, and the trustee took such fund for distribution, subject to Potter's right to an account adjudicated by the Court of Appeals, and likewise to the rights of other creditors acquired to the fund in chancery certainly up to the time of

Kerr's application, if not to the time when it was actually paid to the trustee. 7 *Gill*, 172, *Carter vs. Dennison. Act of* 1836, *ch.* 97.

3rd. That the funds did not actually come into the hands of the garnishee until four years after the attachment was laid and plea pleaded, and cannot therefore be condemned under this attachment. *Seargeant on Attachments*, 101, 103. The act of 1715, ch. 40, sec. 7, authorizes an attachment on judgment against "goods, chattels and credits;" the act of 1824, ch. 74, sec. 2, allows the defendant to come in on *the return day* of the attachment, or four days thereafter, and confess judgment for the amount *then in his hands*, and the act of 1839, ch. 39, secs. 2 and 3, gives the defendant the right to come in at the return day of the writ and give bond, to pay the *amount attached* and dissolve the attachment. Now upon what principle is it that *credits* can be affected down to the *time of trial*, whilst, under the *same writ*, goods and chattels can be reached only till the *return day?* At the time this attachment was laid the garnishee had only the right to claim the fund in chancery, where the appellees had already filed their claim, and they cannot thus rely upon the right of the garnishee to claim the fund without setting up his right as permanent trustee, and if they thus acknowledge the trustee, they cannot at the same time deny the validity of his appointment and claim payment by a superior right to his, and adversely and to the exclusion of the other creditors of the insolvent. 4 *Md. Rep.*, 313, 315, *Jones vs. Horsey*. 2 *Do.*, 482, *Evans vs. Sprigg*.

4th. That this court, in *Glenn vs. Gill*, 2 *Md. Rep.*, 1, only decided that the fund there in controversy was the separate fund of Kerr, and should be distributed by the permanent trustee, instead of the court of chancery, but they, at the same time, denied the right of a creditor to attach a fund in the hands of a trustee, or receiver, appointed by the court of chancery, and would not therefore sanction the right of a creditor who had filed his claim in chancery for a dividend with other creditors, to set up subsequently the right of ano-

ther officer to distribute the fund as superior to the court of chancery, and when this right is established to deny the authority of this officer, and claim the fund adversely from him under a higher right than his.

5th. That the foreign creditor cannot set up a trusteeship, under our insolvent laws, for one purpose, without recognizing it for all. If he asserts any right or claims any advantage which the insolvent laws give him, he must bear, equally with the domestic creditor, the burdens which they impose. The attachment here is laid in the hands of the permanent trustee, in his official name and character. The fund was acquired by the trustee, in his same character, only. But for the rights which the insolvent laws gave him, the fund must have remained in chancery, and it is not competent for the appellees to claim the benefit of the trustee's action in virtue of these rights, and at the same moment repudiate the obligations to which those rights are subservient. The theory of their prayer regards the insolvent laws as inoperative against the foreign creditor, and makes them at the same time a contrivance to serve his interests. Such a theory is against reason and common right, and is not fairly within the purview of this court's decisions.

6th. This attachment was improperly issued, because more than a year and a day had elapsed after the rendition of the judgment before it issued. The act of 1715, ch. 40, calls the writ of *attachment* another *"execution,"* and so do all the other acts which speak of it. The right to issue it therefore goes back to that year when all executions were barred with a year and a day. This was changed to three years, as to writs of *fi. fa.* and *ca. sa.*, by the act of 1823, ch. 194, but this act does not mention attachments. This point is raised by the prayer, because by it the applicability of the attachment to the fund is distinctly presented.

*St. George W. Teackle* and *George M. Gill* for the appellees, argued:

1st. That the very point presented in this case, viz., that

State insolvent laws do not affect the rights of foreign creditors, and that such creditors may attach the property of the insolvent in the hands of his trustee undistributed, and thereby gain a preference over domestic creditors, has been *twice* decided by the Court of Appeals, once in *Larrabee vs. Talbott,* 5 *Gill,* 426, and again in *Evans vs. Sprigg,* 2 *Md. Rep.,* 457. All the facts of this case bring it within this principle. The funds were in the hands of Glenn, to be administered in insolvency, and put there by the decision of this court. When he received them, he took them subject to *liens* upon them—subject to the attachment of the foreign creditor. But it is said we are barred from recovering because we went into *chancery* and *filed* our claims there. But this court has said, the court of chancery had no *jurisdiction* to administer the fund, and if so, we were never legally claiming any thing there. There was no acquiescence by us in the *insolvent proceedings;* to *them* there has been on our part a complete and continued opposition from their commencement to the present time. We never claimed *under* Glenn; we claim by virtue of the constitution of the United States, superior to him, to this court, and to all State laws; we do not set up his trusteeship for any purpose, but simply say that he has got our money—money to which our attachment applies; and we use his official name as trustee merely as a *descriptio personæ.* The court, in the former case, decided, that *Potter* was entitled to his account, but this gave him no *lien* on the fund; when he got the decree, it was still a decree simply giving him no priority over the foreign creditors.

2nd. But it is said, these funds are not liable to our attachment, because they did not come to the hands of the garnishees until after plea pleaded. Our reply is:—1st, that no such point was made in the court below and cannot be raised here, under the act of 1825, ch. 117; 2nd, that in point of law they were received before plea pleaded. The moment Glenn was appointed trustee, by operation of law, all the *property* of the insolvent passed to his hands and vested in him. This fund was his property, and it was never *rightfully* in the court of chancery. 3rd. But again, the practice for sixty years has been to condemn all property and credits in the hands of the

garnishee *at the time of trial.* The act of 1795, ch. 56, secs. 5 and 6, gives the plaintiff power to exhibit interrogatories to the garnishee as to credits which may have come to his hands at the time of the service of the attachment, or *at any other time,* and this seems to be conclusive of the point. (See *Hinkley on Attachments,* 51, 109.) It has been decided again and again in Pennsylvania, that a *debt* may be attached *before it is due.*

3rd. Another objection urged by the other side is, that an attachment cannot be issued on a judgment after the lapse of a year and a day. To this also we reply:—1st, that no such point was raised in the court below; and 2nd, that in every attachment there is a *scire facias* clause, under which the garnishee may come in and plead all proper defences. In this respect it differs essentially from a *fi. fa.,* which commands the sheriff to seize and sell the property. In an attachment, you cannot get execution until judgment of condemnation is first obtained. The act of 1823, ch. 194, gives an execution of *fi. fa.* or *ca. sa.* at any time within three years, and the act of 1834, ch. 189, says, that instead of any other execution on a judgment, the creditor may take out an attachment, and *no time* is specified within which this may be done. Our impression is, that not only may it be issued at any time within three years, but also within the twelve years.

MASON, J., delivered the opinion of this court.

The Court of Appeals, by two previous decisions, (6 *Gill,* 404, and 2 *Md. Rep.,* 1,) have decided, that there was no partnership existing between Kerr and Potter, that the property claimed as partnership property belonged to Kerr individually, and that Potter had no right to the relief for which he prayed in the court of chancery, namely, for the appointment of a receiver, an injunction, &c.; and the case in 2 *Md. Rep.* further decided, that the fund in the hands of the receiver previously appointed should be transferred to the trustee of Kerr, who, pending the chancery proceeding, had applied for the benefit of the insolvent laws.

The plaintiffs in the present action, who are a foreign corpo-

ration, were judgment creditors of Kerr, and upon their judg-ment issued an attachment, and had the same laid in the hands of Kerr's trustee, Mr. Glenn, before the funds had been actually received by him from the receiver, and the question to be determined on this appeal is, whether the attachment under such circumstances can be sustained?

The cases of *Larrabee vs. Talbott*, 5 *Gill*, 435; *Evans & Co., vs. Sprigg*, 2 *Md. Rep.*, 457, and *Duck vs. Poe*, 5 *Md. Rep.*, 1, have settled, that the conveyance of property under our insolvent laws constitutes no impediment to the pursuit of such property for the payment of debts by foreign creditors; in other words, that the discharge of the defendant under the insolvent laws of this State did not impair the right of non-resident judgment creditors to obtain, by attachment or execu-tion on their judgments, a preference over domestic creditors. The defendant seeks, however, to except this case from the operation of this general principle, upon several grounds, none of which do we regard as tenable.

The only two plausible grounds of objection to this proceed-ing are, first, that at the time the attachment was laid in the hands of the trustee, he had not received in his *actual posses-sion* any of the funds of the insolvent; and secondly, in thus admitting the right of the trustee to claim the fund by virtue of the insolvent laws, these creditors have so far recognised those laws as to be bound by them.

As we have said, it has been decided that the court of chan-cery had no jurisdiction over this case as a partnership transac-tion, because, in fact, no partnership existed between Kerr and Potter, and that the property being Kerr's, it passed to his trus-tee by virtue of his application for the benefit of the insolvent laws. This being the case, in contemplation of law, the moment Kerr petitioned the right to his property vested in his trustee, and he became the legal custodiar of it from that moment. In his hands, as the party legally entitled to the possession and the control of the property, the attachment was properly laid. *Actual* possession of money or property on the part of the garnishee is not necessary to make an attachment efficacious or operative, provided he has the legal right to the

possession and control, as in the cases of money deposited in bank and the like.   Although the effects of Kerr were, in fact, in the hands of a receiver appointed in chancery, still they were improperly there, and were held in violation of the rights of the trustee in insolvency, (2 *Md. Rep.*, 1,) and for all practical purposes, the trustee may be treated as the legal possessor of all the property held by Kerr at the time of his application.

Besides, it has been the general practice under our attachment system, under the authority of the 5th and 6th sections of the act of 1795, ch. 56, to condemn all credits or property in the hands of the garnishee of the debtor at the time of the trial.   In the present case, at the time of the rendition of the judgment of condemnation, it is not denied that the funds belonging to the estate of Kerr had been reduced into the actual possession of the trustee, the present garnishee, Mr. Glenn.

This leads us to the second objection, to which we have already referred, namely, whether the plaintiffs, in recognising the right of the trustee to the possession of Kerr's property, by laying their attachment in his hands before he had actually received the money, have so far assented to the insolvent proceedings as thereby to become bound by it.   *Knowledge* is one thing and *assent* another, and it by no means follows, that because a party acts with reference to a knowledge of a particular act, that he thereby assents or acquiesces in that act. Therefore, while it was perfectly legitimate for the plaintiffs to proceed upon the knowledge of the legal effect and operation of our insolvent system upon Kerr's property, we cannot legitimately infer from that knowledge, or from the acts done in pursuance of it, that they assented to or agreed to be bound by the laws themselves.

It seems to us that all the points involved in the present record have been fully settled by previous adjudications in Maryland, and in confirmation of the ruling of the court below. We must, therefore, affirm the judgment.

*Judgment affirmed.*