Savary, *et al. vs.* Da Camara, *et al.*

---

ALPHONSE CHARLES SAVARY, and others *vs.* ELIZA A. DA CAMARA, and others.

*Statute of Descent— Who entitled under the Statute to the Real estate of a decedent— Who not entitled to file a Bill for the Partition of a Decedent's real estate—The true issue in a Proceeding for the Sale of a decedent's Real estate, as not susceptible of Advantageous division— Order of Publication— Article 66, section 33, of the Revised Code—Effect of a Decree for a Sale and partition of a Decedent's real estate, as to persons not proper parties defendant.*

A bill was filed by parties claiming as next of kin of G., on the part of his mother, for the sale of the decedent's real estate, as not susceptible of advantageous partition, and a division of the proceeds among his maternal heirs. The bill asked for an order of publication giving notice of the substance and object of the bill to the unknown heirs of G, on the part of his father. The order was granted as prayed for. On the 10th of March, 1881, upon the mere certificate of the publication of said order, and without affidavit of the existence or non-existence of the unknown heirs of G., or of their non-residence, an interlocutory decree against the non-resident defendants was passed, and an *ex parte* commission to take testimony was issued. On the 28th of the same month, the return of the commission and the testimony taken thereunder, was filed. On the 2nd of May, 1881, a final decree was passed for the

sale of the property, which was sold, and the sale finally ratified on the 8th of July, 1881. On the 30th of the same month, the auditor's report and expense account was ratified. Subsequently, before there was a distribution of the fund, petitions were filed by alleged heirs in the paternal line of G. The petitioners were allowed to file a bill of review, wherein it was alleged that the complainants in the original bill had no interest in common with the paternal heirs of G., in the estate of which he died seized; that the Court could not decree a sale for partition, where the title of the parties applying for such decree was questioned; and that upon a bill for partition, or for sale for partition, the title to real estate could not be adjudicated and settled. To this bill of review, the complainants in the original bill, filed a general demurrer. HELD:

1st. That under the statute of Descent in this State, the heirs of a decedent in the paternal line, if such exist, are entitled to his real property, to the entire exclusion of his relatives on the maternal side, who have no interest whatever in his real estate, except upon the contingency of there being no paternal heirs living.

2nd. That if G. left heirs on the part of his father, which was admitted by the demurrer, the complainants in the original bill, had no more right in fact to his realty, or to file a bill for the partition of it, than absolute strangers.

3rd. That the real issue in a proceeding instituted simply for the sale of real estate, based upon a supposed right to the partition of it, because not susceptible of advantageous division, was not to try titles, not to determine who were the owners of the estate as between adverse claimants ; but whether as among those entitled in common, it should be sold instead of being divided.

4th. That a bill for partition could not be made to serve as an action of ejectment, and was not designed to settle adverse rights, but only to subserve the convenience of those whose interests in the subject-matter were conceded.

5th. That the order of publication, published by the complainants, heirs in the maternal line, was not authorized by section 33, of Article 65, of the Revised Code.

6th. That the heirs of G. in the paternal line were not concluded by the decree for a sale and partition, under the original bill.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, STONE, ALVEY, ROBINSON, IRVING, and RITCHIE, J.

*Thomas Hughes,* for the appellants.

*Wm. Cabell Bruce, John P. Poe,* and *Bradley T. Johnson,* for the appellees.

RITCHIE, J., delivered the opinion of the Court.

On the 25th of September, 1880, the appellees filed their bill of complaint in the Circuit Court of Baltimore City, alleging the death of Dr. Augustus J. T. Giraud; his dying intestate, seized of certain real estate in said city; that the complainants and the defendants, exclusive of the appellants, were, as the next of kin of said Giraud on the part of his mother, entitled to said property, which, because insusceptible of advantageous partition, they prayed might be sold and the proceeds divided among said maternal heirs. The bill further alleges that said Giraud "was the sole survivor of his family on the part of his father, and left no descendants, kindred or next of kin whomsoever, in that line surviving him; that if said Augustus J. T. Giraud had any kindred or relatives in any degree on the part of his father, they were unknown to him in his life-time, and are unknown to your orators, and are not residents of the State of Maryland;" and in the prayer for process asks for an order of publication giving notice to the unknown heirs of said Giraud on the part of his father, of the substance and object of the bill, and warning them by some certain day to appear and answer the same, and abide by such decree as might be passed in the cause.

On the same day the order of publication was granted, giving notice "to the unknown heirs of said Giraud on the

part of his father" to appear on or before 31st day of January, 1881, and show cause why a decree should not pass as prayed. On the 10th of March, 1881, upon the mere certificate of the publication of the aforegoing order, and without affidavit or other proof of the existence or non-existence of the "unknown heirs" of said Giraud, or of their non-residence, they not having appeared, an interlocutory decree against the non-resident defendants was passed, and an *ex parte* commission to take testimony issued. On the 28th of the same month the return of the commission and the testimony taken thereunder was filed.

The witnesses to establish the failure of heirs of Giraud in his paternal line were two of the complainants, Mrs. Eliza A. Da Camara and Mrs. Mary Eliza Mann, who had known Dr. Giraud intimately for many years. The former witness in her answer to the sixth interrogatory says: "Augustus J. T. Giraud, up to and at the time of his death, was the sole survivor of his family on the part of his father, and left no kindred of any degree in that line ; I had frequent conversations with the doctor in his lifetime and he always said that he had no relatives living, on the part of his father." After proceeding to testify to the kinship of the parties in the maternal line, she was in the eleventh interrogatory asked : "Have you ever heard, or do you know, of any relatives of the said Augustus J. T. Giraud than those you have given?" To this she replied : "No, sir, I have not; if there are any such, they are unknown to me or my family, and were unknown to him up to the time of his death."

Mrs. Mann, in response to the question: "What relatives or next of kin did said Augustus J. T. Giraud leave surviving him on the part of his father?" testified : "He did not leave any whatever; he always said he was alone in the world and was the last of his race, so far as relatives of the blood of his father were concerned." To the tenth

interrogatory, which was: "Have you any knowledge or information of any other relatives of said Augustus J. T. Giraud, than those spoken of by Mrs. Da Camara and yourself?" Her answer was: "No, sir, I know of no others, and never heard of any others; if there are any such, they are unknown to me and were unknown to him."

On the 2nd of May, 1881, a final decree was passed for the sale of the real estate mentioned, in which the trustees are directed, on payment of the purchase money, to convey the property sold free, clear and discharged from all claims of the parties to the cause, complainants and defendants, and of those claiming by or under them. The property was accordingly sold, and the sale finally ratified on the 8th of July, 1881. On the 30th of the same month the auditor's report and expense account was ratified. This report shows the gross proceeds of sale to be $28,085.00, the principal item being $19,600.00 for the warehouse property of the deceased, of which said Mrs. Da Camara was the purchaser, and the net balance in hands of the trustees to be $26,246.98. As yet there has been no distribution of this fund, the parties awaiting the issue of the proceedings which have culminated in this appeal.

On the 25th of August, 1881, the petition, supported by affidavit of Alphonse Charles Savary, on behalf of himself and other alleged heirs in the paternal line of said Augustus J. T. Giraud, defendants in the bill as "the unknown heirs of said Giraud, on the part of his father," was filed in the cause, alleging their residence in the city of Paris, in France, and their ignorance of the nature and existence of the proceedings, and of their interest in the property, "up to within the past month," when they first became aware of them through the efforts of their solicitor, Mr. Hughes, who sought them out and communicated the facts through French officials; and setting out how they were related to said Giraud and became his heirs on the part

·of his father, supporting their averments with certain exhibits, and praying that the commission be remanded for further testimony, that their pedigree might be proved and their claim established, and for general relief.

In the September following, a similar petition was filed by François Baude and other alleged heirs of Dr. Giraud, on the part of his father, in accord with the petition of Savary.

On the 16th of January, 1882, it was agreed, upon these petitions, by the solicitors of the claimants, and of these petitioners, respectively, that the Court should pass an order allowing the petitioners to file a bill of review in said cause, without further application or formality; and on the same day the Court accordingly passed the order; and on the 19th of January, 1882, the said petitioners filed their bill of review. During the same month the petitioners respectively filed their amended and supplemental petitions, setting out their rights and claims more in full, and formally praying leave to file their bill of review, "so that it may be determined whether the said complainants are at liberty to obtain said decree, when the bill is filed by them for the sale of property for the purpose of partition, the complainants having no interest in common with your petitioners, or with any of the original defendants to said bill, and that if it should be determined that the said complainants have a right to file said bill, that the commission in this case may be remanded for further testimony, so that the pedigree and claims of your petitioners may be established, and that your petitioners may have such other and further relief as the nature of their case may require."

To the bill of review, which is similar in substance in its averments and prayer, to the petitions, the complainants filed a general demurrer. By consent of parties a ·*pro forma* decree was passed sustaining the demurrer, and dismissing the bill, to enable an appeal to be taken.

promptly to this Court; the costs in both Courts to be paid out of the fund.

The appeal having been accordingly prayed by the complainants of the bill of review, the point to be decided by this Court is whether the demurrer was well taken.

The question of law arising upon the demurrer, is, conceding that the complainants in the bill of review are the heirs of Augustus J. T. Giraud on the part of his father, are they not concluded by the decree of sale in this case, because of the allegations in the original bill, the order of publication granted, and the testimony taken under the commission?

Under our statute of Descent, the heirs of a decedent in the paternal line, if such exist, are entitled to his real property. His relatives on the maternal side have no interest whatever in his real estate, except upon the contingency of there being no paternal heirs living. If, then, Dr. Giraud left heirs on the part of his father, which the demurrer admits, the complainants of the original bill had no more right in fact to his realty, or to file a bill for the partition of it, than absolute strangers. The question then is, can the parties who succeeded to the real estate of Dr. Giraud upon his death, be deprived of their vested ownership, and his maternal relatives who had no right or interest in it whatever, appropriate this property to themselves through the proceedings had in this case, which were instituted simply for the sale of the property, based upon a supposed right to the partition of it, because not susceptible of advantageous division?

The real issue in such a proceeding in chancery is not to try titles, not to determine who are the owners of the estate as between adverse claimants; but whether, as among those entitled in common, it should be sold instead of divided. It is manifest that only those are proper parties to a bill for this purpose, who are entitled to the partition of the property in case no sale were necessary.

If the complainants have no interest in the estate, or if the defendants made by the bill have a paramount and exclusive right to the property, there is wanting that community of interest upon which the jurisdiction of a Court of equity is predicated to decree partition, or the sale to facilitate it.　True, a Court of equity looks to the allegations of the bill, in the first place, and if on its face an averment of ownership is made authorizing a partition, it will entertain the bill; but a bill for partition cannot be made to serve as an action of ejectment, and is not designed to settle adverse rights, but only to subserve the convenience of those whose interests in the subject-matter are conceded.　Parties acquire no rights by a decree for sale by way of partition they had not before, as the sale is merely a process to enable them to enjoy more effectually the rights they previously held.　The object of the bill is to secure a sale for the benefit of those assumed to be the owners of the property; and the defendants who are, or ought to be, those conceded to have a common or concurrent interest, are really summoned, not to litigate a denial of their title, but, as jointly interested, to be heard upon the prayer of the bill to sell, instead of divide, the property, as being most to the advantage of all concerned. It is an amicable proceeding really, so far as the mere question of title is involved, and the issue presented is not who are and who are not the owners of the property, but whether it would not be better for all those admitted to be owners, to have the property converted into money, and the money distributed among them, as the most convenient and beneficial method of realizing their respective shares or interests therein, rather than have their common property divided in kind.　If parties supposing themselves entitled to property, were to partition it among themselves, would that conclude the rightful owner?　How is their title strengthened or added to by invoking the Court to aid the partition among themselves

by decreeing a sale? Such a decree does not alter or render more valid their title; it is simply based upon it.

The decree directing a sale is binding upon all the parties, properly such to the partition proceedings; that is, all those having such a community of interest, complainants and defendants, as would have entitled them to a partition of the property itself if it could have been advantageously done. But it is utterly foreign to the nature and scope of a bill for partition, or sale in the nature of partition, for complainants to endeavor to convert it into a proceeding to determine whether their own allegation of a right in the property is well founded, or to conclude parties whose title is adverse and paramount, and in no wise common or concurrent.

It is evident no such jurisdiction is contemplated by the statute regulating the chancery proceedings for partition, or sale in lieu thereof, from its own language, which is:

"The Court may decree a partition of any lands or tenements, or any right, interest, or estate therein, either legal or equitable, on the bill or petition of any joint tenant, tenant in common, or any parcener, or any concurrent owner, whether claiming by descent or purchase; or, if it appears that the said lands or tenements cannot be divided without loss or injury to the parties interested, the Court may decree a sale thereof, and a division of the money arising from such sale among the parties, according to their respective rights." *Sec.* 13, *Art.* 66, *Rev. Code.*

As the heirs of Dr. Giraud on his father's side are entitled to his real property to the entire exclusion of his maternal relatives, they are in no sense joint tenants, tenants in common, parceners or concurrent owners with the complainants to the original bill, and therefore were not proper parties defendant under the statute.

The assumption of their existence in the bill, or their appearance and answer showing their title, in either case would show the complainants, without standing to file

their bill as maternal kin, and would disclose that absence of community of interest, upon which depends the jurisdiction of the Court to entertain proceedings for partition, or decree a sale based upon the right of partition *inter sese* of the parties to the cause.

It is contended by the appellees that the order of publication, warning "the unknown heirs of Dr. Giraud on the part of his father" to appear and answer, has some efficacy to bind them. But the office of an order of publication is simply to notify parties, who are properly such, to the bill, and the object it seeks to accomplish. It is only a substitute for a *subpœna*. If the bill makes defendants of parties whose character as such discloses the want of standing of the complainants to file their bill, or the want of jurisdiction of the Court from the nature of the proceedings to bind them, the order of publication cannot aid its defects. In other words, complainants in seeking for partition against parties with whom there is no community of interest, and as against whom they have no rights whatever, cannot by an order of publication conclude them, because they do not answer, and effect an adjudication against them notwithstanding their adverse and paramount ownership.

But apart from this view of the office and effect of an order of publication upon such defendants in a bill for partition, there is no provision by the statute for such an order of publication as was published by the complainants in the maternal line. The statute, *sec.* 33, *Art.* 65, *Rev. Code,* provides for an order of publication, "Where it is unknown whether a deceased person, *who ought to be a party* to a bill in chancery, has left any heirs, or if the heirs be unknown, in all such cases the bill may describe such unknown persons as the heirs of the person who, if living, would be the proper party." This is simply to enable the complainants to make the heirs of the person to whose rights his heirs have succeeded, if uncertain if there

Savary, *et al. vs.* Da Camara, *et al.*

be such, or if they be unknown, parties to the bill, by styling them without more particular designation, "the heirs" of the deceased individual who, if alive, would be the proper defendant himself. If then the deceased party, if alive, would not be a proper party, neither would his heirs, and the statute does not apply. Therefore to issue a notification or order of publication to the unknown heirs of Dr. Giraud on the part of his father is to assume Dr. Giraud or his father to be the proper party, if living, and to disclose a title not only incompatible with the complainants' claim for partition of the property among the maternal relatives, but inconsistent with any interest in them in the property whatever, under our laws of descent.

It was urged that unless the paternal heirs can be concluded by the proceedings resorted to, much inconvenience may result to kindred in the maternal line, who are entitled if there be no heirs on the paternal side, should the existence of the latter be uncertain, or they reside beyond the State. This is true, but this is only saying that it is sometimes difficult, from remoteness of residence or other causes incident to human affairs, to find out who the real owners of property are. Naturally, where the contingency of ownership is the death of other persons, the parties who would take in this event are concerned in its ascertainment, and, if left in uncertainty, possibly some loss may result. But on the other hand, greater hardship and greater injustice would result if, to avoid this inconvenience, the actual owners should be deprived of their property, and those should acquire it who have no title whatever. At all events, we do not think that the latter result can be effected through a bill for partition and such an order of publication as was made in this case. It may be that some legal process should be devised to relieve maternal relatives from just such embarrassments as beset those in this case; but such instances are fortunately exceptional; and it would be an undertaking of difficulty to

provide for the inconveniences of the latter class, without risking the just rights of ownership of the other.

It follows from the views expressed, that in our opinion the demurrer should have been overruled. The *pro forma* decree must, therefore, be reversed and the cause remanded for further proceedings, in accordance with this opinion.

> *Decree reversed, and*
> *cause remanded.*

(Decided 29th March, 1883.)