# FRANK S. LEWIS

## *vs.*

## HOWARD W. LEWIS ET AL.

*Partition Proceeding—Raising Question of Title—Adverse Possession—Effect.*

That a question of title is raised by the answer of a defendant in an equitable proceeding for partition or for a sale for the purpose of partition does not justify a suspension of the proceeding in order that this question may be determined by a court of law.                                                              pp. 607-609

That such defendant asks that any naked legal title outstanding of record be conveyed to him is a further reason for not suspending the proceeding in equity, such court alone having jurisdiction to enforce such a claim.                                                    p. 610

That defendant had been in adverse possession of the land for sixteen years is not ground for excluding the jurisdiction of the equity court, it having full power to consider and pass upon the effect, if any, of such possession in respect to the relief sought by the bill.                                                    p. 610

*Decided June 17th, 1920.*

Appeal from the Circuit Court for Harford County. In Equity (HARLAN, J.).

The cause was submitted on briefs to BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS and OFFUTT, JJ.

*Edward Hall, Jr., Walter W. Preston* and *Edw. J. Colgan, Jr.,* for the appellant.

*Harry S. Carver* and *W. Worthington Hopkins,* for the appellees.

PATTISON, J., delivered the opinion of the Court.

The bill in this case was filed by Howard W. Lewis, one of the appellees, and others, against Frank S. Lewis, the appellant, and others, asking for the sale of a farm, lying and being in Harford County, Maryland, composed of two tracts or parcels of land called "Rebecca's Lot" and "Jerusalem," for the purpose of partition among those entitled thereto.

The bill contains the following alleged facts: Joseph H. Lewis, late of Harford County, died in the year 1880, seised and possessed of said lands, which he devised unto Hannah Lewis, for and during her natural life and after her death to his five daughters, Anne Elmira, Olevia J., Eloiza or Eliza S. Lewis, Mary E. Curtiss and Elizabeth Hollingsworth.

Hannah Lewis, his widow, died in 1885. Elizabeth Hollingsworth and her husband and Mary E. Curtis and her husband conveyed their interests in said farm or lands by their respective deeds of April 18th, 1888, and April 9th, 1892, to the said Anne E. and Eliza S. Lewis.

Charles W. and Frank S. Lewis, the appellant, sons of the testator, on the 1st day of May, 1888, conveyed all their rights in said land to their above named sisters, devisees under their father's will.

In the year 1895, Anne E. Lewis departed this life unmarried and without issue, leaving a last will and testament by which she gave and devised to her sister, Eloiza, "for and during her antural life, or until she should marry, all her share of the estate inherited from her parents, the same at her death or marriage to be equally divided between her sisters and brothers or their heirs."

Elizabeth Hollingsworth died in the year 1906 leaving surviving her a husband, Edward Hollingsworth, and one son, Lewis E. Hollingsworth, who with his wife, Alice L. Hollingsworth, were made party defendants to the said bill, and Olevia J. Lewis, who intermarried with Silas Hollingsworth,

died intestate about the year 1910, without issue, her husband having pre-deceased her.

In the year 1905, Mary E. Curtiss died, her husband having pre-deceased her, leaving as her children and heirs at law, Dora, Ida, Marion, Eva and Ethel Curtis, all of whom are party defendants to this bill.

Charles W. Lewis departed this life in 1917 intestate, leaving a widow, Anne Lewis, and the following children his only heirs at law: Howard W. Lewis, intermarried with Olevia S. Lewis; C. Morton Lewis, intermarried with Helena G. Lewis; Carroll S. Lewis, intermarried with Ernestine M. Lewis, who are the plaintiffs to this bill; and Eleanor L. Buchanan, intermarried with Auderly B. Buchanan; William L. Lewis, intermarried with Miriam Lewis; and Frank M. Lewis, bachelor; who are defendants to said bill.

Eliza S. Lewis died in January, 1918, unmarried and without issue, leaving a last will and testament by which she devised to her brother, Frank S. Lewis, the appellant, the "Jerusalem Farm," being the farm mentioned in the bill.

The bill then alleges by whom the land was at that time owned, stating the proportion held by each and naming Frank S. Lewis, the appellant, as one of said owners; and concluded with the essential jurisdictional averment that a partition of said land could not be made without material loss and injury to those entitled thereto.

It is shown by the docket entries that the defendants appeared and answered said bill, but the only answer found in the record is that of the appellant, Frank S. Lewis. In his answer he denies that he is a tenant in common with the other parties named in the cause in said lands,

> "but that he is the owner in his own right of said property under an agreement entered into about the year 1902 with his sister, Eloiza S. Lewis, acting for herself and her other brothers and sisters, the then owners of said property, by which agreement it was provided that your respondent should rebuild the dwelling upon said property which had recently been de-

stroyed by fire, and that he should therein provide a home for his said sister, Eloiza S. Lewis, and another sister, Olevia J. Hollingsworth, during their respective lives. This in consideration that after the death of both of them it should become his absolute property."

The answer then avers that he did

"rebuild said dwelling which was completed in the year 1903, and he there provided said Eloiza S. Lewis a home where she died in January, 1918," but Olevia J. Hollingsworth, his sister, who is now dead, never availed herself of her right to the home so provided for her.

The alleged agreement, as the answer alleges,

"was not reduced to writing, but was adopted and ratified by words or conduct by all the parties then in interest and through whom the other parties to this cause claim as heirs."

The answer further alleges that he

"fully performed and complied with all the terms and obligations imposed upon him by said agreement, and is now entitled that any naked legal title that may be outstanding of record should be conveyed to him so as to perfect his record title."

It is also alleged in the answer that the

"bill of complaint does not correctly state the proportions of interest outstanding of record, according to the proper construction of the instruments therein referred to. In addition, there has since been filed for record the will of Mrs. Olevia J. Hollingsworth (who in the bill is alleged to have died intestate), also a paper writing executed and delivered in the lifetime of said Mrs. Hollingsworth, by which she transferred to said Eloiza S. Lewis all her property. Also there is a deed from Lewis Edward Hollingsworth and wife Ida, Marion, Dora, Eva and Ethel Curtiss to your respondent."

The answer then alleges:

"That in addition to and independent of the facts
above set forth, the other parties to this cause are not
entitled, as against your respondent, to institute parti-
tion proceedings with reference to said property, as
he is in possession of said property and has been in
possession for about sixteen years as disseizor and not
concurrent with said other parties, and that under such
facts this case is an attempt to resort to a court of
equity to obtain an ejectment instead of through a
court of law."

The answer then concludes by denying:

"That said property is not susceptible of partition,"
stating as a reason therefor that it "consists of about
105 acres, a large portion thereof fronting on a public
road, and all the improvements thereon, except the
barn and two tenant houses, were erected by your
respondent."

Exceptions were first filed to this answer, but they were
subsequently withdrawn and a general replication filed. Leave
was obtained to take testimony upon the issues framed, and
testimony was taken thereunder; but before the plaintiff had
concluded his testimony, the defendant, Frank S. Lewis, filed
a petition in which he recites the filing of the bill, and the
allegations and denials of the answer and in said petition
alleged:

"That said answer, together with the testimony here-
tofore taken in this cause, shows that he together with
those under whom he claims have been in adverse pos-
session thereof for more than twenty years," and there-
fore charges that the court was without jurisdiction
"to order a partition or a sale for the purpose of parti-
tion where the party in possession denies the title of
the other parties to the proceeding, but claims title by
adverse possession, leaving such questions to be deter-
mined by a court of law."

The petition also alleges:

"That in addition to said claim of adverse posses-
sion your petitioner, by way of defense, relies, together
with other defenses, upon estoppel and acquiescence on
the part of the other parties to these proceedings and
those through whom they claim, to support which will
require a great amount of testimony at a very heavy
cost in money in addition to the time and labor in-
volved, all of which will be unjustified, if, as your peti-
tioner is advised, the proceeding would have to be dis-
missed or suspended at the hearing to await appropri-
ate proceedings in a court of law."

The petition concludes with a prayer to the Court asking
it

"to pass an order suspending all further proceedings
in this cause unless the other parties to these proceed-
ings shall within a reasonable time, to be determined
by this court, establish their title as tenants in com-
mon of said property with right to possession by ap-
propriate proceedings in a court of law."

To this petition a demurrer was filed, which was sustained
by the Court. It is from the order sustaining that demurrer
that this appeal is taken.

The question here presented was raised in *Barron* v. *Zim-
merman,* 117 Md. 296. In that case, Elizabeth R. Bitner
died, intestate, without issue, seised and possessed of certain
lands. The appellant filed a bill to sell the same for the
purpose of partition among those entitled, alleging that he
was one of her heirs at law, a son of a deceased sister, and
that the land sought to be sold descended to himself and the
defendant heirs as tenants in common. It did not appear
affirmatively upon the bill that the appellant was an illegiti-
mate, but this fact was averred in the answer and shown by
the evidence without dispute.

The appellees questioned the jurisdiction of the Court to
entertain the proceedings upon the ground that a court of

law was the proper tribunal in which to have determined the
question of the appellant's title to the land, which was de-
nied by the appellees because of his illegitimacy. The objec-
tion in that case, as in this, was based upon the language
used in the opinion of the Court in *Savary* v. *DaCamara*, 60
Md. 139, where the Court said "a bill for partition cannot
be made to serve as an action of ejectment and is not de-
signed to settle adverse rights but only to subserve the con-
venience of those whose interest in the subject matter are
concerned. * * * The object of the bill is to secure and sell
for the benefit of those assumed to be the owners of the prop-
erty; and the defendants who are, or ought to be, those con-
ceded to have a common or concurrent interest are really
summoned, not to litigate a denial of their title, but as jointly
interested, to be heard upon the prayer of the bill to sell,
instead of divide, the property, as being the most advant-
ageous to all concerned."

Judge Urner, speaking for this Court in *Barron* v. *Zim-
merman,* said the above quoted expressions from *Savary* v.
*DaCamara* "were employed in the course of an opinion dis-
posing of a demurrer to a bill of review. The decree which
the bill sought to have reviewed had been passed in a pro-
ceeding instituted for the sale of the real estate of a decedent
by persons claiming to be his heirs at law on the maternal
side and alleging that he left no known heirs on the part of
his father. An order of publication, however, was prayed for
and issued against the 'unknown heirs' on the paternal side.
The property was subsequently decreed to be sold, and while
the proceeds were awaiting distribution the bill of review
referred to was filed by parties who claimed to be heirs of
the decedent on the part of his father and who alleged their
previous ignorance of the partition proceeding and of their
interest in the estate. They prayed that the proceedings be
reopened and that an opportunity be given them to prove
their relationship. In this state of the case the sole question
considered upon the demurrer to the bill of review was
whether the plaintiffs in that bill, conceding them to be heirs

of the decedent in the paternal line and hence entitled in the first instance to his property, were not concluded by the decree of sale, the order of publication and the evidence adduced in the partition suit. It was held that they were not so concluded because the maternal heirs, having no interest where there were paternal heirs in existence, as the demurrer admitted, had no more right to maintain a suit for the sale of the property than absolute strangers, and because the order of publication, having been directed against a class of persons who would have a title paramount to and not concurrent with that claimed by the plaintiff in the proceeding, could not support the jurisdiction of the court for the purpose contemplated. The effect of the decision was that the court was not authorized to entertain a bill for partition filed by those claiming as heirs in the maternal line against those who would be entitled, if at all, as heirs on the part of the father, because upon the face of such a bill the want of jurisdiction is apparent.

"In the case before us no such difficulty exists. The allegations of the bill disclose no ground upon which the jurisdiction of the court can be questioned. The interest which the plaintiff claims is not superior to, but is in common with, the interest which he concedes to the defendants. He has filed his bill in strict conformity to the Code provision that the court may decree a partition or sale of lands upon the bill or petition of any concurrent owner. Article 16, Section 129.

"In such suits as the present the test of the court's jurisdiction is whether a demurrer would lie to the bill. *Scarlett* v. *Robinson,* 112 Md. 207; *Hamilton* v. *Traber,* 78 Md. 28; *Johnson* v. *Hoover,* 75 Md. 486; *Slingluff* v. *Stanley,* 66 Md. 225. It is evident here that the bill is not demurrable, and we see no reason to hold that the court should be divested of the jurisdiction it has acquired merely because the answer and the proof deny the plaintiff's legitimacy. If such a denial were sufficient to oust the court of the jurisdiction which the bill has conferred, the same result would be pro-

duced whether the objection were well founded or fictitious, and a court of equity could proceed in no case of this character where the plaintiff's rights are disputed by any of the defendants. As the present bill contains all the essential jurisdictional averments, and as the issue raised in the answer as to the plaintiff's legitimacy was relevant to the subject-matter to which the jurisdiction of the court below had attached, we think the court was fully authorized to hear and determine the question."

In *Eureka Life Insurance Co.* v. *Geis*, 121 Md. 196, Ann C. Hammond devised the lands, sought by the bill in that case to be sold for the purpose of partition, unto her son, Rezin W. Hammond, for and during his natural life, and after his death to his children equally, share and share alike, but should no child or descendants be living at the time of his death, then said lands were to go and vest absolutely in the "right heirs of the testatrix."

Rezin W. Hammond died leaving surviving him three sisters and the children of a deceased brother, also an adopted child, Beulah E. B. Hammond. After the death of Rezin W. Hammond a bill was filed by his sisters against the widow and children of his deceased brother and Beulah E. B. Hammond, his adopted child, but in the bill it was denied that Beulah E. B. Hammond, his adopted daughter, was entitled to any right or interest in said lands. but she was made a party thereto in order to have determined her rights, if any, in said lands as the adopted daughter of Rezin W. Hammond.

The question there presented was, did the court in that proceeding have jurisdiction to determine whether Beulah E. B. Hammond took under the will of Ann C. Hammond as the child of Rezin W. Hammond. The case of *Savary* v. *Da Camara* was also cited in that case in support of the contention that the court was without jurisdiction to determine the question raised. Nevertheless we there held that it had power and authority to decide the question so presented.

The decisions in the cases of *Barron* v. *Zimmerman* and *Eureka Life Insurance Co.* v. *Geis,* from which we have quoted, are controlling in the case before us, and the questions here presented were proper questions to be determined in these proceedings.

In the defense made by the answer—that the other parties to the proceeding had no interest in said land, but that the same was owned by the defendant in his own right by virtue of an agreement made with one of his sisters acting for and on behalf of the others and ratified by them—the claim is made that "any naked legal title that may be outstanding of record should be conveyed to him (under the agrement so made) so as to perfect his record title." To enforce this claim, a court of equity alone has jurisdiction.

The defense that the appellant had been in possession of said land as disseisor for about sixteen years does not support the appellant's claim of title thereto by adverse possession, though the effect of such possession, if any, in respect to the right of the plaintiffs to the relief sought by the bill was a matter that the court was fully empowered to consider and pass upon. The other defenses, we think, need not be discussed.

The action of the court was correct in refusing to suspend the proceedings and to require the plaintiffs to the bill to go into a court of law to have determined the question of title raised by the appellant. We will, therefore, affirm its order sustaining the demurrer to the petition filed.

> *Order affirmed and cause remanded, with costs to the appellees.*